**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| The State of Arizona, *ex rel.* Terry Goddard, the Attorney General; the Civil Rights Division of the Arizona Dept. of Law; and Jill Shumway,<br><br>    Plaintiffs,<br><br>vs.<br><br>DHL Express (USA), Inc.,<br><br>    Defendant. | No. CV-06-2611-PHX-FJM<br><br>**ORDER** |

The court has before it DHL's motion for summary judgment (doc. 76), Shumway's response (doc. 85), the State of Arizona's response (doc. 89), and defendant's reply (doc. 92). We also have before us Shumway's motion for partial summary judgment (doc. 81), defendant's response (doc. 87), and Shumway's reply (doc. 93).[1]

**I**

In 2003, Jill Shumway was an account representative with Airborne Express, earning an annual base salary of $37,500. DHL Express (USA), Inc. ("DHL") acquired Airborne in

---

[1]Shumway states that her motion for partial summary judgment on her retaliation claim is based on the assumption that her motion for summary judgment in a companion case, alleging breach of contract, will be granted. See CV-06-1188-PHX-DKD. A resolution of Shumway's contract claim, however, is not a prerequisite to our determination of the retaliation claim in this case. Whether DHL breached the 2004 Field Sales Compensation Plan, though perhaps relevant, is not determinative of her retaliation claim.

1 August 2003, and Shumway became a DHL employee earning the same base salary. In July 2 2004, DHL hired Greg Powers and Patrick Van Den Berg as account representatives, with 3 a starting base salary of $47,500. Shumway complained to her supervisors Brian Cooper and 4 Brian Kelly about the pay disparity. When they failed to resolve the issue to her satisfaction, 5 she filed a discrimination complaint with DHL's human resources department. In October 6 2004, over the objection of her supervisors, DHL's human resources department raised 7 Shumway's salary to $43,500, still below that of Powers and Van Den Berg. Shumway's 8 MPSJ at 4.

9       In the fall of 2004, shortly after filing the discrimination complaint, Shumway began 10 negotiating the terms of a shipping contract with Walgreen's Mail Services ("WMS"), a 11 wholly-owned subsidiary of Walgreen Co. Her supervisors, as well as DHL's pricing 12 department, initially approved the terms of the sale. Shumway understood that this sale 13 would earn her a sizable sales commission known as a "controlled credit." However, in 14 October 2004, before the sale was finalized, the pricing department notified Jerry Ulmer, the 15 national account manager for Walgreen Co., of the pending WMS sale. As national account 16 manager, Ulmer believed that he was entitled to the full revenue credit for the sale to a 17 Walgreen Co. subsidiary.

18       According to DHL, under the "51% Rule" a national account manager receives the 19 revenue credit for any sale to a subsidiary of a national customer if the national customer 20 owns at least 51% of the subsidiary. Therefore, in January 2005, Brian Kelly and Tom 21 Wolford concluded that Ulmer was entitled to controlled credit for the WMS account, and 22 that Shumway was entitled to "managed credit," resulting in a reduction of thousands of 23 dollars in commissions. She now contends that the application of the 51% Rule to deprive 24 her of the controlled credit was pretext for DHL's retaliation against her for filing the 25 discrimination complaint.

26       Shumway filed a charge of discrimination on June 30, 2005, with the Arizona 27 Attorney General's Office, alleging that DHL discriminated against her by paying her less 28 than similarly-situated males and retaliated against her for reporting alleged discrimination

- 2 -

by denying her controlled credit for the WMS account. The Attorney General's office investigated Shumway's charge, issued a reasonable cause determination, and ultimately filed a complaint against DHL on behalf of itself and Shumway.

## II

### A

Shumway claims that DHL violated Title VII, 42 U.S.C. § 2000e-2(a), by paying her less than similarly-situated male employees.[2] DHL contends that Shumway's sex discrimination claim should be dismissed because she failed to file the discrimination charge within 300 days "after the alleged unlawful employment practice occurred," as required by 42 U.S.C. § 2000e-5(e)(1).

The United States Supreme Court recently explained that the statutory term "employment practice" generally refers to "a discrete act or single 'occurrence' that takes place at a particular point in time." Ledbetter v. Goodyear Tire & Rubber Co., 127 S. Ct. 2162, 2169 (2007) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110-11, 122 S. Ct. 2061, 2071 (2002)). With respect to a pay discrimination claim, the discrete act occurs, and the EEOC charging period is triggered, with a decision setting an employee's pay. Id. at 2165. The Court expressly rejected the argument that an employer violates Title VII and triggers a new charging period every time it issues a paycheck under a discriminatory pay structure. Id. at 2167-70. "A new violation does not occur . . . upon the occurrence of subsequent nondiscriminatory acts that entail adverse effects resulting from the past discrimination," such as the issuance of each paycheck. Id. at 2169. Instead, these acts are the present effects of prior discriminatory conduct that themselves have "no present legal consequences." Id. at 2168. In contrast, "if an employer engages in a series of separately actionable intentionally discriminatory acts, then a fresh violation takes place when each act is committed." Id. at 2169

---

[2] The State has voluntarily dismissed, under Rule 41(a)(1), Fed. R. Civ. P., its sex discrimination claim under the Arizona Civil Rights Act, A.R.S. § 41-1463(B)(1), as untimely (doc. 82).

1  Defendant contends that its "pay-setting decision" occurred when it hired Powers and
2  Van Den Berg in July 2004 and set their salaries $10,000 higher than Shumway's. She
3  discovered the discrepancy on July 30, 2004, but did not file a discrimination charge until
4  June 30, 2005–outside the 300-day EEOC charging period. Shumway responds that the pay-
5  setting decision was not made until October 14, 2004, when she complained about the pay
6  discrepancy and DHL refused to increase her pay to a level commensurate with her male
7  counterparts. Both parties are correct. Defendant made a pay-setting decision when it set
8  Powers and Van Den Berg's salaries at a rate different from Shumway's. This act occurred
9  outside the 300-day charging period and is therefore not actionable. However, a separate
10 pay-setting decision was made on October 14, 2004, when DHL adjusted Shumway's salary
11 but refused to match the salaries of similarly-situated males. This was not simply "an
12 adverse effect resulting from past discrimination," id., but was a distinct, affirmative pay-
13 setting determination. Because it occurred during the 300-day period, this claim is properly
14 before us.

**B**

16 To support a claim under Title VII, Shumway must first establish that (1) she belongs
17 to a protected class; (2) she was qualified for the position; (3) she was subjected to an
18 adverse employment action; and (4) similarly-situated males were treated more favorably.
19 Metoyer v. Chassman, 504 F.3d 919, 950 (9th Cir. 2007). If she succeeds in making a prima
20 facie case, the burden of production shifts to DHL to articulate a "legitimate,
21 nondiscriminatory reason" for its employment decision. Noyes v. Kelly Servs., 488 F.3d
22 1163, 1168 (9th Cir. 2007). If DHL carries its burden of production, the burden of
23 production shifts back to Shumway to raise a triable issue of fact that DHL's proffered reason
24 was pretext for unlawful discrimination. Id.

25 DHL does not challenge Shumway's prima facie case, but instead argues that she
26 failed to produce any evidence that its articulated reason for the pay-setting decision was
27 pretext for discrimination. It asserts that, at the time it adjusted Shumway's salary, Liny
28 Schwahn and Patti McEwen, two female DHL executives, compared Shumway's sales

- 4 -

1   experience to that of Powers and Van Den Berg. Shumway had approximately two years of
2   experience, while Powers had been in sales for over four years and had been a district sales
3   manager, and Van Den Berg had over four years of sales experience and had worked for one
4   of DHL's competitors, Federal Express. Schwahn and McEwen concluded that, although
5   Shumway qualified for a salary increase, because she had less sales experience than Powers
6   and Van Den Berg, she was not eligible for their salary level. DSOF ¶¶ 26-30.

7   Shumway does not respond to this explanation or otherwise attempt to establish
8   pretext. Instead, she simply argues that because DHL made a salary adjustment she
9   necessarily "demonstrated she was doing the same job as her comparators and had the same
10  qualifications." Shumway's Response at 9. We disagree. DHL adjusted Shumway's salary
11  based on her comparative years of sales experience. It concluded that she had less experience.
12  Without challenging this conclusion, Shumway has failed to satisfy her burden of producing
13  evidence from which a jury could conclude that DHL's proffered explanation for the pay
14  disparity was pretext for sex discrimination. Accordingly, we grant DHL's motion for
15  summary judgment on the sex discrimination claim.

**III**

17  The State and Shumway (collectively "plaintiffs") claim that DHL retaliated against
18  Shumway for filing a discrimination charge when it denied her controlled credit for the WMS
19  sale, in violation of Title VII, 42 U.S.C. § 2000e-3(a) and A.R.S. § 41-1464(A).[3] Again, DHL
20  does not challenge plaintiffs' prima facie case of retaliation. Instead, it argues that plaintiffs
21  have failed to present sufficient evidence that its articulated reason for denying the controlled
22  credit was pretext for unlawful retaliation. Plaintiffs can show pretext "either directly by
23  persuading the court that a discriminatory reason more likely motivated the employer or
24  indirectly by showing that the employer's proffered explanation is unworthy of credence."
25  Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256, 101 S. Ct. 1089, 1095 (1981).

---

[3] Arizona looks to Title VII when analyzing claims under the Arizona Civil Rights Act. See Higdon v. Evergreen Int'l Airlines, Inc., 138 Ariz. 163, 165 n.3, 673 P.2d 907, 909 n.3 (1983). Therefore, we consider these claims together.

- 5 -

1 In order to create a genuine issue of fact as to pretext sufficient to defeat DHL's motion for
2 summary judgment, "very little evidence of discriminatory motive" is required. Little v.
3 Windermere Relocation, Inc., 301 F.3d 958, 971 (9th Cir. 2002).

4 DHL asserts that it has an established policy and practice, known as the "51% Rule,"
5 under which the commission credit for a sale to any subsidiary of an existing customer goes
6 to the person who manages the parent company's national account, no matter who made the
7 sale to the subsidiary. DSOF ¶ 43. It contends that the 51% Rule dictated that Jerry Ulmer,
8 not Shumway, was entitled to the controlled credit. DHL employees Tom Wolford, Brian
9 Kelly, and Jeremy Ulmer testified that DHL has consistently followed the 51% Rule. Id.

10 To establish pretext, plaintiffs argue that there is no evidence that the 51% rule existed
11 before the January 2005 decision to deny Shumway the controlled credit. They claim that
12 there is nothing in any written DHL document that refers to the 51% Rule or otherwise
13 supports denying her the controlled credit. "When pressed on the details of this unwritten
14 policy, DHL offers only vague, contradictory interpretations, all of which lack credibility."
15 State's Response at 13. Plaintiffs contend that the Rule was invoked only as an after-the-fact
16 justification for its decision.

17 DHL concedes that it cannot produce any document showing that the 51% Rule was
18 ever communicated to account representatives. Defendant's Response at 4. Nevertheless, it
19 contends that the Rule's existence before January 2005 is established in emails, powerpoint
20 presentations, written instructions, and sales presentations to new hires. DSSOF ¶¶ 66-83.
21 Citing paragraphs 72, 73, and 75 of its statement of facts, DHL contends that it communicated
22 information regarding the 51% Rule to its district and regional managers "beginning in June
23 2004." DHL's Response at 5. But these references do not support this proposition. First,
24 DHL refers to an undated document entitled "CAC Business Rules," purporting to describe
25 the 51% Rule, DSSOF, ex. W, and an email dated May 10, 2005, again purportedly referring
26 to the 51% Rule, DSSOF, ex. V. Yet neither of these documents is probative of the existence
27 of the 51% Rule before January 2005. DHL also refers to an undated page from a powerpoint
28 presentation that ambiguously provides, "[a]ny business unit must be 51% owned by the

1  controlling company," DSSOF, ex. U, which allegedly "went out . . . somewhere in 2004,"
2  DSSOF, ex. T at 125.  Even if we assume that this document was distributed to sales staff in
3  June 2004, its ambiguous content leaves a question of fact as to whether a 51% Rule that
4  would preclude Shumway's controlled commission existed before January 2005.

5        DHL correctly argues that in judging whether an employer's proffered justification is
6  "false," it is not important whether it is objectively false, but only whether the "employer
7  honestly believed its reason for its actions, even if its reason is 'foolish or trivial or even
8  baseless.' " Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1063 (9th Cir. 2002) (citation
9  omitted).  However, DHL's inability to substantiate the existence and application of the 51%
10 Rule before January 2005 can reasonably be construed by a trier of fact as evidence that the
11 51% Rule was not a "consistent policy and practice," thereby casting doubt on whether it
12 honestly believed its proffered reasons to deny Shumway the controlled credit.

13       Finally, plaintiffs contend that DHL acknowledged that the 51% Rule is generally
14 written into its national contracts, such that subsidiary entities are incorporated into the
15 national contract.  State's SOF ¶ 43.  Yet the Airborne/Walgreen Co. agreement does not
16 contain a 51% subsidiary ownership clause and WMS was never expressly included as part
17 of that agreement.  Id.; PSSOF, ex. 30.  In December 2004, rather than simply incorporating
18 WMS into the existing Walgreen Co. national contract, DHL and WMS entered into a
19 completely new contract with different rates and structure.

20       Based on the foregoing, we conclude that plaintiffs have produced sufficient evidence
21 from which a reasonable fact finder could conclude that DHL's explanation for denying the
22 controlled credit was pretext for retaliation.  Accordingly, we deny both parties motions for
23 summary judgment on the retaliation claim.

**IV**

25       Finally, the State claims that DHL retaliated against Shumway by denying her a
26 promotion after she filed a discrimination charge.  Shumway does not assert this claim herself.
27 Shumway's Response at 4.  DHL argues that Shumway has not exhausted her administrative
28 remedies for the failure to promote claim and therefore the claim must be dismissed.

- 7 -

1    Before seeking judicial relief, a plaintiff must exhaust administrative remedies by
2 either "filing a timely charge with the EEOC, or the appropriate state agency, thereby
3 affording the agency an opportunity to investigate the charge." Freeman v. Oakland Unified
4 Sch. Dist., 291 F.3d 632, 636 (2002). "Incidents of discrimination not included in an EEOC
5 charge may not be considered by a federal court unless the new claims are like or reasonably
6 related to the allegations contained in the EEOC charge." Lyons v. England, 307 F.3d 1092,
7 1104 (9th Cir. 2002). A claim is "reasonably related" if it falls "within the scope of the
8 EEOC's *actual* investigation or an EEOC investigation which *can reasonably be expected* to
9 grow out of the charge of discrimination." Id. (emphasis in original) (citation omitted). In
10 making this determination, we "focus on the factual allegations made in the charge itself,
11 describing the discriminatory conduct about which a plaintiff is grieving." Freeman, 291 F.3d
12 at 637.

13    On June 30, 2005, Shumway filed a charge of discrimination with the Arizona Civil
14 Rights Division ("ACRD"), alleging that DHL discriminated against her by paying her less
15 than male employees, and then retaliated against her for filing the grievance by depriving her
16 of controlled credit. DSOF, ex. R. In contrast, the "failure to promote claim" involves a
17 discrete set of facts not encompassed by these charges. On July 11, 2005, Shumway spoke
18 with Brian Cooper regarding a promotion and received the necessary paperwork to begin the
19 process. DSOF ¶ 61. Brian Kelly then allegedly attempted to block the promotion, at one
20 point stating that Shumway should not be promoted because she was pursuing a
21 discrimination claim. State's SOF ¶ 59. None of these facts are included in the charge filed
22 with the ACRD. The language of the charge itself would not have reasonably resulted in an
23 agency investigation encompassing DHL's failure to promote Shumway. Because Shumway
24 failed to exhaust her administrative remedies regarding the failure to promote claim, it is not
25 properly before us and is dismissed.[4]

---

[4] We also note that the State's complaint contains no reference to a failure to promote claim, nor has the State ever sought to amend the complaint in order to raise such a claim.

- 8 -

**V**

**IT IS ORDERED GRANTING** DHL's motion for summary judgment on the sex discrimination claim and the failure to promote claim, and **DENYING** its motion on the retaliation claim (doc. 76). **IT IS FURTHER ORDERED DENYING** Shumway's motion for partial summary judgment (doc. 81).

DATED this 16th day of January, 2008.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge

---

Moreover, Shumway admits that she voluntarily decided not to pursue promotion with DHL and never completed the required paperwork for promotion.