**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| The State of Arizona, *ex rel.* Terry Goddard, the Attorney General; the Civil Rights Division of the Arizona Dept. of Law; and Jill Shumway,<br><br>Plaintiffs,<br>vs.<br><br>DHL Express (USA), Inc.,<br><br>Defendant. | No. CV-06-2611-PHX-FJM<br><br>**ORDER** |

Jill Shumway and the State of Arizona asserted claims of retaliation against DHL Express pursuant to Title VII, 42 U.S. § 2000e-3(a), and the Arizona Civil Rights Act, A.R.S. § 41-1464 ("ACRA"). Following a four-day trial on Shumway's Title VII retaliation claim, a jury returned a verdict in favor of Shumway and awarded $350,000 in damages. The State of Arizona does not have a right to a trial by jury for its equitable claim under the ACRA. Therefore, pursuant to Rule 52(a), Fed. R. Civ. P., we now make our findings of fact and conclusions of law regarding the State's claim. We asked the parties to submit memoranda on the issue of injunctive and equitable relief (doc. 156). Only the State submitted a memorandum (doc. 158).

In the summer of 2004, Shumway filed a complaint with DHL's human resources department claiming that she was paid less than similarly-situated male employees. About this same time, she began negotiating the terms of a shipping contract with Walgreens Mail Services ("WMS"). The terms of the deal were initially approved by Shumway's supervisor, Brian Cooper, his supervisor Brian Kelly, and his supervisor Tom Wolford, as well as DHL's

1  pricing department. Shumway understood that this sale would earn her a sizable commission
2  known as "controlled credit." Before the WMS sale was finalized, however, Shumway was
3  told that because of the "51% Rule" she would not receive the controlled credit, but instead
4  would receive a much smaller commission known as "managed credit."

5  According to DHL, under the 51% Rule a national account manager receives the
6  revenue credit for any sale to a subsidiary of a national customer if the national customer
7  owns at least 51% of the subsidiary. Because WMS is a wholly owned subsidiary of
8  Walgreens Co., the national account manager, Jerry Ulmer, claimed the controlled credit.
9  Although written processes were in place to resolve disputes concerning commissions,
10 without pursuing this recourse, in January 2005, Shumway's supervisors, Brian Kelly and
11 Tom Wolford, concluded that Shumway was not entitled to the controlled credit.

12 Under A.R.S. § 41-1464(A), it is an unlawful employment practice to discriminate
13 against an employee because of the filing of a charge of discrimination. The Arizona
14 Civil Rights Act is modeled after and generally identical to Title VII, 42 U.S.C.
15 §§ 2000e–2000e-17. Title VII case law is persuasive in the interpretation of the ACRA.
16 Higdon v. Evergreen Int'l Airlines, Inc., 138 Ariz. 163, 165 n.3, 673 P.2d 907, 909 n.3
17 (1983). To support a claim of retaliation, the State must prove that Shumway engaged in an
18 activity protected under the ACRA, DHL subjected her to an adverse employment action, and
19 there was a causal connection between the protected activity and the adverse employment
20 action. Najar v. State, 198 Ariz. 345, 348, 9 P.3d 1084, 1087 (Ct. App. 2000); Nilsson v.
21 City of Mesa, 503 F.3d 947, 953-54 (9th Cir. 2007).

22 It is undisputed that Shumway engaged in an activity protected under the ACRA when
23 she complained to her supervisor and DHL's human resources department that she was paid
24 less than similarly-situated male employees. It is also undisputed that DHL subjected her to
25 an adverse employment action when it denied her controlled credit commission for the WMS
26 sale. The disputed issue in this case is whether DHL denied the controlled credit *because*
27 Shumway filed a complaint against DHL.

28

1. DHL's explanation for denying Shumway the controlled credit was the 51% Rule; however, there is no written documentation evidencing the existence of the Rule prior to January 2005. An ambiguous reference to "51%" on an undated page from a powerpoint presentation is insufficient to establish the parameters of a 51% Rule prior to January 2005, which could legitimately serve to deprive Shumway of controlled credit. DHL's Field Sales Compensation Plan described the policies governing compensation incentives for sales employees. It contained a provision for crediting points between salespersons when a customer ships out of multiple territories. Yet the Plan made no reference to the 51% Rule. DHL's assertion that the 51% Rule was well-established is not credible in light of its failure to include the Rule in its written policies governing incentives. The fact that all the supervisors in the chain initially approved awarding the controlled credit to Shumway shows that they did not believe it existed either. Not one of them bothered to check the national account list.

DHL's failure to include the 51% Rule in its written compensation plan prior to January 2005, its failure to pursue the dispute resolution process before denying the controlled credit, Brian Kelly's superficial and abrupt treatment of the dispute, and Shumway's excellent employment record, all support the conclusion that DHL's stated reason for denying the controlled credit is not believable and therefore was pretext for retaliation. Our conclusion is further supported by the jury verdict in favor of Shumway on her Title VII claim. Therefore, we find by a preponderance of the evidence that the State has established that DHL retaliated against Shumway in violation of A.R.S. § 41-1464(A).

Upon a finding that a defendant has intentionally engaged in an unlawful employment practice, we may enjoin the defendant from engaging in the unlawful practice and order such affirmative action, including equitable relief, as may be appropriate. A.R.S. § 41-1481(G). In order to ensure the elimination of the unlawful employment practice, a grant of injunctive relief is mandatory "absent clear and convincing proof that there is no reasonable probability of further noncompliance with the law." Civil Rights Div. v. Superior Court, 146 Ariz. 419,

424, 706 P.2d 745, 750 (Ct. App. 1985). DHL has offered no proof to support its future compliance with the law.

Therefore, IT IS ORDERED GRANTING a permanent injunction against DHL prohibiting it from retaliating against any employee, former employee, or applicant for employment who opposes an unlawful employment practice or participates in an investigation of an unlawful employment practice. In addition, DHL shall within 90 days from the date of final judgment (1) post notices in all Arizona locations advising employees that discrimination and retaliation are prohibited; (2) expand and modify its written policies to clearly delineate the illegality of retaliation, including the elimination of language threatening employees with discipline if it determines that a complaint was not made in good faith or contained false information; (3) institute an appropriate reporting procedure for complaints of discrimination and retaliation; and (4) provide training to current and future Arizona employees, district sales managers, regional sales managers, and vice presidents of sales regarding employment discrimination, retaliation, and reporting policies and procedures. These procedures should be incorporated into DHL's business practices on an ongoing basis, but in no event for a period of less than 12 months. DHL shall file a compliance report with the court no later than September 1, 2008, including copies of revised policies and educational materials, as well as a description of steps taken to comply with this order.

All the claims of all the parties having been resolved the clerk is directed to enter judgment in favor of Jill Shumway and against DHL on the jury verdict in the amount of $350,000.

DATED this 6th day of March, 2008.

_Frederick J. Martone_
Frederick J. Martone
United States District Judge