**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| The State of Arizona, *ex rel.* Terry Goddard, the Attorney General; the Civil Rights Division of the Arizona Dept. of Law; and Jill Shumway,<br><br>Plaintiffs,<br><br>vs.<br><br>DHL Express (USA), Inc.,<br><br>Defendant. | No. CV-06-2611-PHX-FJM<br><br>**ORDER** |

Jill Shumway and the State of Arizona asserted retaliation claims against DHL Express pursuant to Title VII, 42 U.S.C. § 2000e-3(a), and the Arizona Civil Rights Act, A.R.S. § 41-1464 ("ACRA"). Following a four-day trial on Shumway's Title VII retaliation claim, a jury returned a verdict in favor of Shumway and awarded $350,000 in damages. We then made findings of fact and conclusions of law on the State's equitable claim under the ACRA and also concluded that DHL retaliated against Shumway (doc. 160). We granted a permanent injunction against DHL prohibiting it from future retaliation and ordering it to institute processes to ensure compliance.

We now have before us defendant's motion for judgment as a matter of law or, alternatively, for a new trial (doc. 165), Shumway's response (doc. 170), the State of Arizona's response (doc. 171), and defendant's reply (doc. 173). The defendant's motion is premised on three grounds: (1) plaintiffs failed to establish causation, (2) plaintiffs failed

1  to establish intentional retaliation, and (3) the damages award is excessive. We will grant
2  judgment as a matter of law only if "there is no legally sufficient evidentiary basis for a
3  reasonable jury to [have found for plaintiffs] on that issue." Reeves v. Sanderson Plumbing
4  Prods., Inc., 530 U.S. 133, 149, S. Ct. 2097, 2109 (2000).

5  Based on the following, we deny defendant's motion for judgment as a matter of law
6  or, alternatively, for a new trial (doc. 165).

**I**

8  In the summer of 2004, Shumway filed a complaint with DHL's human resources
9  department claiming that she was paid less than similarly-situated male employees. About
10 this same time, she began negotiating the terms of a shipping contract with Walgreens Mail
11 Services ("WMS"). The terms of the deal were initially approved by Shumway's supervisor,
12 Brian Cooper, his supervisor Brian Kelly, and his supervisor Tom Wolford, as well as DHL's
13 pricing department. Shumway understood that this sale would earn her a sizable commission
14 known as "controlled credit." Before the WMS sale was finalized, however, Shumway was
15 told that because of the "51% Rule" she would not receive the controlled credit, but instead
16 would receive a much smaller commission known as "managed credit."

17 According to DHL, under the 51% Rule a national account manager receives the
18 revenue credit for any sale to a subsidiary of a national customer if the national customer
19 owns at least 51% of the subsidiary. Because WMS is a wholly owned subsidiary of
20 Walgreens Co., the national account manager, Jerry Ulmer, claimed the controlled credit.
21 Although written processes were in place to resolve disputes concerning commissions,
22 without pursuing this recourse, in January 2005, Shumway's supervisors, Brian Kelly and
23 Tom Wolford, concluded that Shumway was not entitled to the controlled credit.

**II**

25 Defendant first contends that plaintiffs have failed to establish the causation element
26 of retaliation because the clear weight of the evidence shows that Jeremy Ulmer, rather than
27 Kelly and Wolford, made the decision to deprive Shumway of the controlled credit
28 commission, and there is no evidence that Ulmer knew of Shumway's pay disparity

- 2 -

complaint. We reject this argument outright. First, while Ulmer may have been the first to suggest that he and not Shumway was entitled to the controlled credit for the WMS sale, there was no evidence that he was the final decision maker. Ulmer was a salesperson in Chicago, not the final arbiter of DHL's compensation program. DHL's Field Sales Compensation Plan (the "Plan") expressly provided that the executive vice president of sales, in conjunction with human resources, is the final judge in resolving disputes regarding pay incentives under the Plan. Brian Kelly and Tom Wolford decided that Shumway was not entitled to the controlled credit and further decided not to advance Shumway's challenge through the process outlined in the Plan. Their decision was the final decision. The evidence at trial clearly establishes that Kelly and Wolford, not Ulmer, were the decision makers.

Moreover, in support of its motion for summary judgment, defendant unequivocally stated that "Brian Kelly and Tom Wolford made the decision that Plaintiff was not entitled to any controlled credit for the sale she made to WMS." DSOF ¶ 42 (doc. 77). Kelly confirmed in his deposition that he and Wolford made the decision to deny Shumway the controlled credit. DSOF, ex. D at 14, 63. Wolford also acknowledged in his deposition that he and Kelly were the decision makers. DSOF, ex. L at 101-05. In fact, Wolford testified that "the buck stops with [him]." Id. at 104:5-8. It is disingenuous for defendant to now argue that only Ulmer was the decision maker. This argument is directly contrary to their assertions at the summary judgment stage and defendant is judicially estopped from asserting otherwise. Counsel for the defendant stretches the bounds of reasonable advocacy in asserting such a position. See E.R. 3.1 and 3.3, Rules of Professional Conduct.

We conclude the evidence was clear that Kelly and Wolford were the decision makers and therefore causation was sufficiently established.

**III**

Defendant also contends that plaintiffs failed to demonstrate that DHL intentionally discriminated against Shumway. It argues that there was insufficient evidence for the jury to conclude that Kelly and Wolford did not honestly rely on the 51% Rule in concluding that Shumway was not entitled to the controlled credit. Plaintiffs bear the burden of proving that

- 3 -

1  the defendant intentionally retaliated.  The plaintiff may establish intentional retaliation "by
2  showing that the employer's proffered explanation is unworthy of credence."  Reeves, 530
3  U.S. at 143, 120 S. Ct. at 2106 (quoting Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S.
4  248, 256, 101 S. Ct. 1089, 1095 (1981)).

5       Here, plaintiffs made a substantial showing that defendant's explanation for its
6  decision was false.  Although DHL had detailed written compensation policies, these policies
7  made no reference to the 51% Rule.  Moreover, although defendants argued that the 51%
8  Rule was well established and applied, the only documentary evidence of the rule was an
9  ambiguous, undated, single-page powerpoint slide.  Evidence was also presented at trial
10 establishing DHL's failure to pursue the available dispute resolution process before denying
11 the controlled credit, Shumway's excellent employment record, Brian Kelly's superficial and
12 abrupt treatment of the dispute, and Kelly's statements recommending against Shumway's
13 promotion because she had filed a complaint.  This evidence was more probative than DHL
14 employees' statements that they "knew about the 51% Rule."  Defendant's Motion at 14.  On
15 the contrary, the fact that all the supervisors in the chain initially approved awarding the
16 controlled credit to Shumway is evidence that they did not "know about the 51% Rule."

17      We conclude that there is more than sufficient evidence upon which a reasonable trier
18 of fact could find that DHL's asserted justification for denying the controlled credit was
19 false, and that DHL intentionally retaliated against Shumway.  See Reeves, 530 U.S. at 147,
20 120 S. Ct. at 2108-09 ("[O]nce the employer's justification has been eliminated,
21 discrimination may well be the most likely alternative explanation, especially since the
22 employer is in the best position to put forth the actual reason for its decision.").

**IV**

24      Finally, defendant contends that the jury's award of compensatory damages in the
25 amount of $350,000 is excessive.  It speculates that the award may improperly include a
26 commission for the fourth quarter of 2005 and that the balance of the award for emotional
27 distress damages is excessive.

28

1     Title VII permits the award of compensatory damages, including compensation for "pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." 42 U.S.C. § 1981a(b)(3). "A jury's finding of the amount of damages must be upheld unless the amount is grossly excessive or monstrous, clearly not supported by the evidence, or only based on speculation or guesswork." Handgards, Inc. v. Ethicon, Inc., 743 F.2d 1282, 1297 (9th Cir. 1984) (quotations omitted).

     Shumway testified that the lost controlled credit commission on the WMS sale totaled $153,000 annually. Tr. 155, 191. DHL now claims that because Shumway resigned effective November 4, 2005, she was not entitled to the fourth quarter commission, in the amount of $43,000. Even assuming the jury award includes this amount, it would be appropriate. The issue in this case was whether DHL retaliated against Shumway by denying her the controlled credit commission. The jury concluded that it had. But for DHL's retaliation, Shumway would have received the $153,000 controlled credit commission. She is entitled to this amount in damages.

     Defendant also challenges the remainder of the damage award, or $197,000, which is reasonably attributable to emotional distress damages. A plaintiff's "testimony alone is enough to substantiate the jury's award of emotional distress damages." Zhang v. American Gem Seafoods, Inc., 339 F.3d 1020, 1040 (9th Cir. 2003). Shumway testified that she "enjoyed [her job at DHL] immensely," Tr. 159, and had intended to "make[ ] a long-term career at DHL." Tr. 158. Although she had been "recognized as a team leader and a top performer," her experience at DHL became "the biggest professional disappointment [she had] ever experienced." Tr. 159-60. She remained at DHL for almost a year after losing the WMS controlled credit commission. She testified that "[i]t was a terrible time." Tr. 158. It affected her personal life, Tr. 158; "it was just consuming . . . it was overwhelming." Tr. 160. The distress was so significant that she "couldn't get past it. So eventually [she] resign[ed]." Tr. 159.

While the award for emotional distress damages may be high, we cannot conclude that it is grossly excessive or monstrous. The evidence showed that Shumway worked at DHL almost a year after she was deprived of the controlled credit commission. She worked in an atmosphere of distrust, self-doubt, disappointment, and frustration. She suffered at home and at work. The distress was so significant that she eventually quit her job. We conclude that the jury's award for emotional distress damages is sufficiently supported by the evidence and is neither grossly excessive nor monstrous.

**V**

**IT IS ORDERED DENYING** defendant's motion for judgment as a matter of law or, alternatively, for a new trial (doc. 165).

DATED this 8th day of May, 2008.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge